OPINION
Defendant, Jerry F. Hessler, appeals the judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief brought pursuant to R.C. 2953.21. For the following reasons, we affirm the judgment of the trial court.
The pertinent facts[1] and procedural history of this case are as follows. Defendant dated Judy Stanton off and on in the mid to late 1970's. In 1980, defendant left for National Guard training. Upon his return, he discovered that Judy had been dating his friend, Doug Stanton, and that the two planned to marry. Defendant was devastated by this news and subsequently threatened Doug several times with physical harm. Judy and Doug married in January 1981 and eventually moved away from Columbus. Although the Stantons asked defendant many times to leave them alone, defendant always managed to find out where they were living and consistently sent cards and packages to Judy. The Stantons' last move was to Ashland, Ohio. They told their family and friends not to give out their address. Eventually, defendant stopped sending the cards and packages.
In the early 1980's, defendant was hospitalized numerous times for mental illness. In 1981 and 1982, he was treated for severe depression and was diagnosed with borderline personality disorder. In 1983, after four weeks at the Central Ohio Psychiatric Hospital ("COPH"), he was diagnosed as having mixed personality disorder with hysterical, dependent, and passive-aggressive features. During this time, he also received outpatient care from various mental health professionals.
In the mid-1980's, defendant became friends with Laura Griffin. Laura began dating defendant's friend, David Stacey. At some point, the friendship between defendant and David ended, and defendant began harassing David and Laura. The two married in 1988 and eventually moved to Hawaii. Because defendant frightened them, Laura asked her parents not to disclose their location. However, defendant ultimately learned their Hawaii address.
In 1991, defendant began working as a customer service representative for Bank One in Columbus. While there, he met Tracey Myers. Tracey soon became the object of defendant's affections. Tracey was at first receptive to defendant's advances; however, she eventually asked him to leave her alone. Tracey began dating Brian Stevens, and the two married in 1995. Although Tracey was married, defendant continued to shower her with small gifts and unwanted attention. Another Bank One employee, Amy Wells, made similar complaints about defendant.
As a result of a meeting between defendant and Bank One management regarding defendant's behavior, defendant signed a document in August 1994 stating that he would not have contact with Tracey and that if he did, it would constitute grounds for dismissal. When defendant violated the terms of the agreement, his supervisor, Mark Campolito, supported by two other bank managers, terminated defendant's employment in October 1994.
After his termination, defendant became verbally abusive with his mother and began damaging her home. His mother was so frightened by his behavior that for a time she moved out of her home and in with her mother. When defendant's brother tried to retrieve some camping gear from the house, defendant chased him with a gun. In the spring of 1995, defendant's family, spurred by defendant's increasingly violent behavior, contacted the police, an attorney, the Columbus City Prosecutor's office and various mental health professionals in an effort to obtain help for defendant.
In May 1995, defendant was involuntarily committed to COPH, where he was diagnosed as having delusional disorder, persecutory type, a possible intermittent explosive disorder, and dependent personality. He was discharged on July 20, 1995, with only a fair prognosis. After August 1995, defendant failed to keep follow-up psychiatric appointments and may have stopped taking his antidepressant and antipsychotic medications.
Sometime in the fall of 1995, defendant told his mother that he was behaving the same way he had been before going to COPH. When his behavior became increasingly disturbing, defendant's mother became worried and told her daughter-in-law. On November 14, 1995, the daughter-in-law telephoned Bank One officials to warn them about defendant.
On November 19, 1995, defendant drove to the home of Tracey and Brian Stevens and fatally shot them and their infant daughter, Amanda, and wounded Ruth Canter, a friend of the Stevens. Defendant then drove to Mark Campolito's apartment and fired several shots at him, one of which hit Campolito in the arm. After leaving Campolito's apartment, defendant drove to the home of Laura Griffin's parents and fatally shot Laura's father, Paul Thane Griffin.
Denise Reffitt, a police officer who knew defendant from church, heard that defendant was a suspect in the multiple homicides. She contacted defendant's brother and sister-in-law to obtain the names of other potential victims. The sister-in-law mentioned Judy Stanton and Laura Griffin.
At around 10 p.m., Judy Stanton received telephone calls from her brother and Reffitt urging her to leave her home in Ashland because defendant was on a shooting rampage. In anticipation of defendant's arrival, Doug Stanton armed himself with two guns. Judy and the Stanton's four children waited in the kitchen while Doug went outside to see if it was safe to leave the house. When Doug saw defendant outside, he returned, locked the door and told Judy and the children to lie down on the kitchen floor. Defendant fired three shots through the back door, kicked the door open and fired four more shots in the kitchen. None of the Stantons were shot. Doug fired seven shots at defendant. Although defendant was shot, the bulletproof vest he was wearing prevented serious injury.
Defendant was subsequently arrested, and on November 30, 1995, he was charged with six counts of aggravated murder with death penalty specifications. Five of the six counts carried a specification that defendant committed aggravated murder while committing, or attempting to commit, aggravated burglary. All six counts carried a specification that defendant committed aggravated murder as part of a course of conduct involving the purposeful killing or attempt to kill two or more persons. Defendant was also charged with one count of murder, three counts of attempted aggravated murder, one count of aggravated burglary, and one count of improperly discharging a firearm. All twelve counts contained firearm specifications.
On September 17, 1996, the jury found defendant guilty on all twelve counts. Thereafter, the case proceeded to the penalty phase of the trial. At the conclusion of the penalty phase, the jury recommended the sentence of death on all six of the aggravated murder charges. The trial court accepted the jury's recommendation. After merger of some of the aggravated murder counts, four death sentences remained. Defendant was sentenced in accordance with law on the remaining counts.
Defendant filed an appeal as of right to the Ohio Supreme Court, which affirmed the trial court's judgment in all respects. State v. Hessler (2000), 90 Ohio St.3d 108. The United States Supreme Court denied defendant's petition for a writ of certiorari. Hessler v. Ohio (2001),532 U.S. 998, 121 S.Ct. 1662.
During the pendency of the proceedings before the Ohio Supreme Court, defendant filed a petition for postconviction relief in the Franklin County Court of Common Pleas pursuant to R.C. 2953.21. Defendant subsequently filed a corrected petition and three amended petitions. In his petition,[2] defendant contended that his death sentences were void or voidable under the Ohio and/or United States Constitutions and, therefore, he was entitled to a new sentencing hearing. Although defendant raised thirty-two grounds for relief in his petition, he essentially made two arguments: (1) that defendant was deprived of the effective assistance of counsel during the penalty phase of the trial because his trial counsel pursued a single theory of mitigation, i.e., mental illness, and neglected to present other compelling mitigation evidence; and (2) that the state of Ohio failed to provide the defense with various documents that were material to defendant's sentencing, resulting in a violation of Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194. The petition was accompanied by numerous documents attached as exhibits.
On February 12, 1999, the trial court filed a decision and entry in which it found that defendant had set forth sufficient operative facts supporting some of the grounds for relief and that an evidentiary hearing on those grounds was warranted. On July 21, 1999, the court issued an order specifying which grounds defendant would be permitted to pursue at the evidentiary hearing and which witnesses he would be permitted to call.
An evidentiary hearing was held on July 9, 2001. Defendant was permitted to present witnesses in accordance with the court's prior order. The state did not call any witnesses. On July 23, 2001, defendant moved to amend his petition to add a thirty-third ground for relief.
By decision and entry filed August 2, 2001, the trial court sustained defendant's motion to amend and denied relief on the petition in its entirety. Defendant has appealed the trial court's judgment, assigning five errors for our consideration:
 [1.] The trial court erred by not granting relief on appellant's petition, where the evidence adduced at the evidentiary hearing, in conjunction with his postconviction exhibits, showed that appellant was denied his Sixth Amendment right to effective assistance of trial counsel.
 [2.] The trial court erred by limiting the scope of the evidentiary hearing and by not allowing the testimony of relevant witnesses who would have supported appellant's grounds for relief, thus violating appellant's right to an adequate state corrective process.
 [3.] The trial court erred by denying an evidentiary hearing on all of appellant's grounds for relief, where he presented sufficient operative facts and supporting exhibits to merit a full hearing and relief.
 [4.] Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the Fourteenth Amendment.
 [5.] Considered together, the cumulative errors set forth in appellant's substantive grounds for relief merit reversal or remand for a proper postconviction process.
In addition, the state has filed a cross-appeal, advancing a single assignment of error:
 The trial court abused its discretion in allowing defendant to amend his postconviction petition after the hearing.
Defendant's first and third assignments of error are interrelated and therefore will be addressed together. Defendant contends that the trial court should have held an evidentiary hearing on all of his grounds for relief and should not have denied his petition on the grounds for relief on which the trial court held an evidentiary hearing.
A petition for postconviction relief is a statutory vehicle designed to correct the violation of a defendant's constitutional rights. R.C. 2953.21
states in part:
 (A)(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 (C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *
Although designed to address claimed constitutional violations, the postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun (1999),86 Ohio St.3d 279, 281; State v. Steffen (1994), 70 Ohio St.3d 399, 410. It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. State v. Murphy (2000), Franklin App. No. 00AP-233. A petition for postconviction relief thus does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. Id., citing State v. Jackson (1980), 64 Ohio St.2d 107.
To warrant a hearing, a petitioner must first provide evidence which demonstrates a cognizable claim of constitutional error. R.C. 2953.21(C). That evidence must demonstrate that the denial or infringement of the petitioner's rights renders the petitioner's conviction and sentence void, or voidable, under the Ohio and/or United States Constitutions. State v. Perry (1967), 10 Ohio St.2d 175, paragraph four of the syllabus. If the petitioner does not submit evidentiary materials which facially demonstrate such an error, the court may deny the petition without a hearing. Murphy, supra, citing Jackson, at 110. Before granting a hearing, the trial court must determine from the petition, the supporting affidavits, and the entire record of proceedings whether there are substantive grounds for relief. State v. Lawson (1995),103 Ohio App.3d 307, 311.
Further, the doctrine of res judicata requires that the evidence presented in support of the petition come from outside, or "dehors," the record. In State v. Cole (1982), 2 Ohio St.3d 112, the Ohio Supreme Court explained:
 "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment." [Id. at 113, quoting Perry, supra, paragraph nine of the syllabus (emphasis sic).]
Thus, pursuant to Cole, the doctrine of res judicata bars consideration of constitutional issues in postconviction proceedings where those issues were raised or could have been raised on direct appeal. Murphy, supra.
Res judicata also implicitly bars a petitioner from "re-packaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal. Murphy, supra; Lawson, supra, at 315; State v. Reynolds (1997), 79 Ohio St.3d 158, 161. In other words, the evidence relied upon must not be evidence which was in existence or available for use at the time of trial or direct appeal. Murphy, supra.
Many of the grounds for relief alleged in defendant's petition are claims of ineffective assistance of counsel. When a convicted defendant alleges that he or she has received ineffective representation, the defendant must demonstrate: (1) that counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution; and (2) that counsel's errors prejudiced defendant depriving him or her of a trial whose result is reliable. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. In the context of a petition for postconviction relief, "the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." Murphy, supra, quoting Cole, supra, at 114.
There are numerous ways to provide effective assistance in any given case. Id., citing Bradley, at 142. The Bradley court recognized that "[j]udicial scrutiny of counsel's performance must be highly deferential," such that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional representation. Id., quoting Bradley, at 142. Furthermore, even assuming counsel's performance was ineffective, an error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction unless it can be shown that, but for counsel's unprofessional error, the result of the proceeding would have been different. Murphy, supra, citing Strickland, supra.
In grounds for relief one through seven, defendant claims that trial counsel was ineffective during the mitigation phase of his trial because counsel failed to sufficiently investigate and present evidence of defendant's fourteen-year career in the National Guard. Defendant contends that a reasonable mitigation investigation would have resulted in the presentation of live witnesses who would have testified to defendant's dedication to military service. Defendant argues that the testimony of these witnesses would have humanized defendant and provided the jury with reasons to spare his life. In short, defendant maintains that trial counsel was ineffective in not developing defendant's military career as an independent mitigating factor.
In support of these claims, defendant focuses on the following evidence: (1) the testimony of Master Sergeant William C. Alspach, II and Staff Sergeant John Durand, both of whom served with defendant in the National Guard and testified at the evidentiary hearing that defendant was a dedicated and exemplary soldier; (2) the testimony of Major Richard A Cline, a military expert on National Guard records and procedures, who testified extensively at the evidentiary hearing as to defendant's military service and achievements and opined that the testimony offered at the mitigation hearing by defense expert psychologist, Dr. Jeffrey Smalldon, regarding defendant's military record was inadequate because Dr. Smalldon does not have a military background and is unfamiliar with military terminology; (2) the testimony of defendant's trial counsel, who averred that had he been aware of additional military records and/or military personnel who could have testified as to defendant's military record, he would have presented defendant's military service as an independent mitigating factor; and (3) the affidavit of a juror who attested that additional evidence of defendant's military record would have made a difference in her sentencing deliberations.
Generally, the decision of what mitigating evidence to present during the penalty phase of a capital trial is a matter of trial strategy. State v. Keith (1997), 79 Ohio St.3d 514, 530. Moreover, debatable trial tactics generally do not constitute ineffective assistance of counsel. State v. Coulter (1992), 75 Ohio App.3d 219, 230. An attorney's selection of witnesses to call at trial falls with the purview of trial strategy and, absent prejudice, generally will not constitute ineffective assistance of counsel. Id. A reviewing court may not second-guess every aspect of defense counsel's presentation of the mitigation evidence at the penalty phase of the trial. State v. Yarbrough (2001), Shelby App. No. 17-2000-10. Further, it is well-established that the existence of alternative or additional mitigation theories does not establish ineffective assistance of counsel. State v. Combs (1994),100 Ohio App.3d 90, 98; State v. Post (1987), 32 Ohio St.3d 380,388-389.
Initially, we note that where, as here, a defendant is represented by new counsel on appeal, a claim of ineffective assistance of trial counsel is capable of review and therefore may be barred under the doctrine of res judicata from being raised in a later postconviction relief proceeding. Lawson, supra, at 316; Combs, supra, at 102; State v. Issa (2001), Hamilton App. No. C-000793 (as a general rule, ineffective assistance of counsel during the mitigation phase can be raised on direct appeal). Defendant does not argue, and the record does not suggest, that appellate counsel could not have discovered the additional military evidence in the course of preparing for defendant's direct appeal. Thus, the issue of trial counsel's ineffectiveness in failing to present additional military evidence could have been raised on direct appeal and is thus barred under the doctrine of res judicata from being raised in defendant's postconviction proceedings. Lawson; Combs; Issa.
We further note that counsel presented a meaningful and cogent mitigation defense, i.e., that defendant was severely mentally ill at the time he committed the crimes and that he was so dangerous that he should not have been released from his commitment to COPH. In particular, Dr. Randy Otto, a clinical psychologist, reviewed defendant's mental health records and found that defendant's behavior prior to the time he committed the offenses was "alarming and disturbing" and presented a high risk of violence to others. Hessler, supra, at 128. In Dr. Otto's view, COPH's 1995 records lacked an adequate plan to assess and decrease this risk. Dr. Otto opined that defendant's July 1995 discharge from COPH was "ill conceived and poorly planned." Id.
Dr. Smalldon reviewed defendant's mental health records, interviewed defendant and defendant's family members, and administered several psychological tests to defendant. According to Dr. Smalldon, all the COPH clinicians who evaluated defendant agreed that defendant was very seriously mentally ill and dangerous. Defendant, however, lacked insight into his mental illness and had a long history of noncompliance with outpatient treatment. Dr. Smalldon opined that defendant suffers from borderline personality disorder, passive-aggressive disorder, caffeine-related disorder, narcissistic and obsessive compulsive traits and possibly bipolar disorder. Dr. Smalldon further opined that defendant's "severe and longstanding mental illness" substantially impaired his ability to conform his behavior to the requirement of the law and constituted a mitigating factor under R.C. 2929.04(B)(3). Id. at 129.
From the foregoing, it is clear that this is not a situation where counsel failed to present any mitigation at all or to engage in any meaningful preparation. See Post, supra. Defendant's claim regarding his military record thus involves nothing more than an alternative mitigation theory and does not provide substantive grounds for postconviction relief. Combs, supra, at 103.
Moreover, at the evidentiary hearing, trial counsel offered an explanation for his failure to call military witnesses to testify during the penalty phase of the trial. Defendant testified that he and his mitigation team considered calling military witnesses but ultimately determined as a matter of trial strategy not to call such witnesses. Specifically, trial counsel averred that he reviewed defendant's military records and determined that the records should be introduced only in an effort to establish that defendant functioned well in a structured environment such as the military. Accordingly, he determined that the evidence of defendant's military service should be introduced through the testimony of Dr. Smalldon because of the concern that calling military witnesses to testify regarding defendant's military achievements could "open the door" to bad character evidence, particularly evidence of writings defendant made on his cell wall[3] during the guilt phase of the trial.
In addition, this court finds that trial counsel's decision to introduce defendant's military records through Dr. Smalldon rather than a military expert did not deprive defendant of effective assistance of counsel. Although a military expert may have been familiar with the terminology contained in defendant's military files, this court finds that Dr. Smalldon's testimony was sufficient to portray a reasonable picture of defendant's military background.
Finally, we note that any speculation on the part of trial counsel that alternative or additional trial tactics may have improved the defense does not establish ineffective assistance of counsel. Combs, supra, at 104; Post, supra, at 388.
As to the juror's affidavit, we conclude that the trial court was correct in finding that it was not properly before the court. The affidavit was barred by Evid.R. 606(B), which governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict. That rule provides:
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. * * *
Evid.R. 606(B) embodies Ohio's version of the aliunde doctrine, which provides that "[t]he verdict of a jury may not be impeached by the testimony or affidavits of a member of that jury unless there is evidence aliunde impeaching the verdict * * * [and] thus, before a juror may testify as to his own verdict, a foundation for that testimony must be acquired by the court, other than by testimony volunteered by the jurors themselves." State v. Mills (1995), Hamilton App. No. C930817, quoting State v. Kehn (1977), 50 Ohio St.2d 11, 18. In the instant case, defendant has not established a foundation for the testimony other than that offered by the juror. Accordingly, the trial court could not have properly considered it.
Given all the foregoing, and according due deference to trial counsel's performance, this court finds that the decision not to call additional military witnesses and/or more fully develop defendant's military service as an independent mitigating factor was reasonable under the circumstances.
Even assuming, arguendo, that trial counsel's decision not to present defendant's military record as an independent mitigating factor was unreasonable, this court finds that defendant has failed to establish the prejudice prong of Bradley, supra. As noted previously, to establish prejudice, defendant must demonstrate that there was a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Upon review of the record, this court finds that defendant has failed to adduce sufficient operative facts establishing that there was a reasonable probability that the jury would have concluded that the mitigating factors, including defendant's military service, outweighed the aggravating circumstances beyond a reasonable doubt.
In his eighth through tenth grounds for relief, defendant contends that trial counsel was ineffective in failing to present evidence of defendant's involvement with the Church of Jesus Christ of Latter Day Saints and the effect of his excommunication from the church. Defendant again contends that such evidence would have humanized him and provided the jury with reasons to recommend a sentence of life imprisonment rather than the death penalty. Defendant maintains that trial counsel was ineffective in failing to develop the role of religion in defendant's life as an independent mitigating factor.
In support of these grounds for relief, defendant attached to his petition the affidavits of several of defendant's friends and acquaintances who attested both as to the structure and teachings of the church and to the significant role the church played in defendant's life. Defendant also attached the affidavit of a juror who attested that additional evidence of defendant's religious life would have made a difference in her sentencing deliberations. Although defendant was granted a hearing on these claims and was permitted to call trial counsel and one of the aforementioned affiants, defendant did not submit any evidence at the evidentiary hearing.
As with defendant's arguments regarding his military record, we conclude that the issue of trial counsel's ineffectiveness in failing to present evidence of defendant's religious life could have been raised on direct appeal and is thus barred under the doctrine of res judicata from being raised in defendant's postconviction proceedings. Lawson, supra; Combs, supra; Issa, supra. Further, the juror's affidavit was not competent evidence, as it was barred by the aliunde rule set forth in Evid.R. 606(B). Moreover, trial counsel's decision not to develop defendant's religious life as an additional or alternative mitigation theory does not constitute ineffective assistance of counsel. Combs, supra.
In grounds for relief eleven through twenty-three, twenty-nine, and thirty, defendant contends that the state breached its duty to learn of and/or make available all information favorable to defendant and material to defendant's sentencing. Specifically, defendant maintains that the state violated Brady, supra, by failing to provide documents maintained by COPH and outpatient treatment facilities, North Central Community Counseling Center and Netcare, and by withholding factual information known to employees of these facilities. Defendant also contends that he was prejudiced by the state's failure to disclose additional military records maintained by the National Guard.
The trial court held that defendant was not entitled to an evidentiary hearing on these counts because defendant failed to submit evidentiary materials containing sufficient operative facts demonstrating grounds for relief. Specifically, the court held that under Brady, the state was under no duty to produce the documents and/or factual information in question because the agencies in possession of the information were not involved in defendant's prosecution. We agree.
In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Ohio Supreme Court expressly followed Brady in State v. Johnston (1988), 39 Ohio St.3d 48, paragraph four of the syllabus.
In addition, the Ohio Supreme Court, in discussing Brady, has stated that the prosecution has "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case * * *." State v. Sanders (2001), 92 Ohio St.3d 245, 261, quoting Kyles v. Whitley (1995), 514 U.S. 419, 437, 115 S.Ct. 1555. "The Brady obligation thus extends to information held by state or local agencies involved in the investigation or prosecution at issue." Sanders, supra, citing United States v. Morris (C.A. 7, 1996), 80 F.3d 1151, 1169.
We agree with the trial court's conclusion that the state's failure to contact the involved mental health agencies and the National Guard in order to obtain exculpatory evidence did not violate Brady because the agencies in possession of the challenged evidence are independent agencies who were not acting on the government's behalf in the investigation or prosecution of defendant's case. Sanders, supra.
Furthermore, we find that the disputed evidence does not constitute "material" evidence as contemplated by Brady. In paragraph five of the syllabus, the Johnston court set forth the "materiality" standard as follows:
 In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. (United States v. Bagley [1984], 473 U.S. 667, followed.)
As noted previously, the defense presented substantial evidence at the mitigation hearing regarding the treatment defendant received from various mental health agencies and providers, including the opinions of Drs. Smalldon and Otto that COPH had negligently released defendant prior to the time he committed the crimes. The documentation and/or factual information allegedly suppressed by the state was cumulative of this evidence and was thus not "material" under Brady, as there is no reasonable probability that the outcome of the sentencing would have been different had the additional evidence been made available.
Further, as noted previously, evidence was offered at the mitigation hearing regarding defendant's service in the National Guard. Information contained in the challenged National Guard records allegedly suppressed by the state was cumulative of this evidence. Under Brady, such evidence was not "material" as there is no reasonable probability that the outcome of the sentencing would have been different had additional National Guard records been made available. Therefore, defendant's claims for postconviction relief with respect to the state's alleged failure to disclose exculpatory evidence was patently insufficient to warrant an evidentiary hearing.
In his twenty-fourth ground for relief, defendant contends that trial counsel was ineffective in failing to present evidence of defendant's medical records from Netcare. Defendant asserts that these records would have demonstrated that he had been diagnosed with numerous mental disorders and that his mental health care providers did not take appropriate precautions despite awareness of the high risk that his mental illness would lead to violence.
As noted previously, trial counsel presented substantial evidence at the mitigation hearing regarding the alleged inadequate treatment provided defendant by various mental health facilities via medical records and testimony from Drs. Smalldon and Otto. Trial counsel testified at the evidentiary hearing that the Netcare records would have been useful to support the mitigation theme that defendant received inadequate treatment from the various mental health agencies involved. From this testimony, it is clear that the challenged Netcare records are merely cumulative of evidence offered at the mitigation hearing. Defendant has failed to establish that trial counsel was ineffective in failing to present additional mitigation evidence. Combs, supra.
Further, at the evidentiary hearing, trial counsel testified that the additional records had the potential to damage defendant's mitigation case if revealed to the jury. Specifically, trial counsel testified that because the Netcare records contained an allegation of rape against defendant, trial counsel wished to avoid having that information dispensed to the jury.
Defendant contends in grounds for relief twenty-five and twenty-six that trial counsel was ineffective in failing to seek or utilize the services of either an expert psychiatrist or an expert social worker. Defendant argues that additional experts would have been able to explain to the jury the impact of failing to properly treat defendant during his confinement at COPH and his aftercare at North Central Community Counseling Center. Defendant further contends that Drs. Smalldon and Otto were unable to fully explain defendant's psychiatric medications and treatments and/or to adequately critique the performance of the social workers who failed to provide proper care to defendant.
In ground for relief twenty-seven, defendant avers that trial counsel was ineffective in presenting Dr. Smalldon as the cornerstone of defendant's penalty phase defense. Defendant states that he was prejudiced by Dr. Smalldon's failure to provide testimony that was comprehensible to the laypersons on the jury. In support of this claim, defendant presented the affidavit of a juror who attested that, had defendant's mental illness been presented in a simpler, less technical manner, she would have understood the seriousness of defendant's mental illness and would have recommended life imprisonment rather than death. No evidentiary hearing was held on these claims.
Preliminarily, we note that the juror's affidavit was barred by the aliunde rule in Evid.R. 606(B). Further, trial counsel retained and utilized expert clinical psychologists Drs. Smalldon and Otto during the mitigation phase of defendant's trial. Those experts testified extensively regarding defendant's mental illness, the inadequate treatment rendered by the mental health facilities involved in defendant's care, and the resulting effect of that inadequate treatment. The evidence presented in defendant's petition is merely cumulative of, or alternative to, other mitigation evidence presented by trial counsel and does not support defendant's claim of ineffective assistance. "A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial." Combs, supra, at 103. Moreover, review of the record does not indicate a reasonable probability that presentation of expert psychiatric or social work testimony would have changed the outcome of defendant's trial.
Defendant contends in ground for relief twenty-eight that trial counsel was ineffective in failing to present mitigating evidence of defendant's ability to adapt to confinement. In support of his claim, defendant attached records from the Franklin County Corrections Center establishing that defendant had had no disciplinary problems during his incarceration before or during his trial. The trial court determined that defendant was not entitled to an evidentiary hearing on this ground.
Because defendant was incarcerated prior to and at the time of trial, evidence of defendant's ability to adapt to confinement was clearly evident and of record at trial and on direct appeal. Accordingly, we find that his claim is barred by the doctrine of res judicata. Yarbrough, supra. Further, Dr. Smalldon testified that defendant would do very well in a highly structured environment such as prison. Thus, the evidence presented in defendant's petition was merely cumulative of, or alternative to, that presented by Dr. Smalldon and thus failed to materially advance defendant's claim of ineffective assistance. State v. Fears (1999), Hamilton App. No. C-990050. Moreover, review of the record does not indicate a reasonable probability that presentation of additional evidence regarding defendant's ability to adapt to prison life would have altered the outcome of defendant's trial.
In ground for relief thirty-two, defendant contends that trial counsel was ineffective in failing to present evidence in mitigation that defendant lacked a criminal record. Although defendant was granted a hearing on this claim and was permitted to call trial counsel to testify, defendant did not submit any evidence at the evidentiary hearing. Further, as the trial court noted, the record reflects that the jury was in fact aware of defendant's lack of criminal history. As such, defendant's claim is unsupported by operative facts establishing grounds for relief.
In his thirty-third ground for relief, which was added to the petition after the evidentiary hearing, defendant alleges that the state's violation of Brady in failing to disclose additional National Guard records undermined trial counsel's representation, depriving defendant of effective assistance of counsel. We agree with the trial court's finding that in this claim, defendant is attempting to achieve through Strickland, supra, and Bradley, supra, that which he could not achieve through Brady, supra.
Defendant's claim of ineffective assistance hinges on the state's alleged Brady violation. As we have previously determined, the state did not violate Brady because it had no duty to turn over evidence in the possession of the National Guard. There being no underlying Brady violation, defendant's ineffective assistance contention necessarily fails, as an ineffective assistance claim cannot be contingent on the state providing that which it is not legally required to do.
Further, as we have previously noted, trial counsel's failure to present defendant's military record as an additional or alternative mitigating factor does not constitute ineffective assistance of counsel. Combs, supra.
Based on the foregoing, we find that defendant has failed to produce sufficient, credible evidence demonstrating that he suffered an infringement or deprivation of his constitutional rights during the penalty phase of his trial. Significantly, on direct appeal, the Ohio Supreme Court found that evidence presented in mitigation "pale[d] in significance" and "count[ed] for little" when considered against his course of conduct in executing multiple victims. Hessler, supra, at 131. There is no reasonable probability that, absent trial counsel's allegedly deficient performance and the state's alleged violation of Brady, the jury would have concluded that the multiple-murder aggravating circumstance did not outweigh the mitigating factors beyond a reasonable doubt. Accordingly, the trial court properly denied defendant's petition for postconviction relief. Defendant's first and third assignments of error are thus not well-taken.
By the second assignment of error, defendant contends that the trial court erred by limiting the scope of the evidentiary hearing and by not allowing the testimony of a mitigation specialist.
Trial counsel employed mitigation specialist, James F. Crates, to assist in the penalty phase preparation of defendant's trial. Prior to the evidentiary hearing on defendant's petition for postconviction relief, trial counsel filed a motion requesting that the trial court allow Mr. Crates to testify at the hearing. In an affidavit attached to the motion, Mr. Crates indicated that had he had access at the time of trial to the additional National Guard records appended to the postconviction petition, he would have recommended to trial counsel that the defense present evidence of defendant's outstanding military service as an independent mitigating factor. He further stated that after reviewing the affidavits of the postconviction witnesses, he would have recommended that the defense present witness testimony as to defendant's military record beyond that presented by Dr. Smalldon.
The trial court overruled the motion and did not permit Mr. Crates to testify at the evidentiary hearing. Defendant argues that by denying Mr. Crates the opportunity to testify, the trial court denied defendant his only opportunity to expose the deficiencies in the defense's mitigation preparation.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. A reviewing court may not disturb a trial court's determination unless the trial court abused its discretion and the appellant has been materially prejudiced by that abuse. State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion means more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Rivera (1994),99 Ohio App.3d 325, 328. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
Upon review of the record, we cannot find that the trial court abused its discretion in disallowing Mr. Crates's testimony. The trial court permitted and considered the testimony of three other witnesses in regard to defendant's military service record. Even had Mr. Crates testified consistently with his affidavit, his testimony would have been cumulative to the testimony of those witnesses. Further, defendant suffered no prejudice as a result of the trial court's action, as defendant's claim regarding his military record involves an alternative mitigation theory which does not provide substantive grounds for postconviction relief. Combs, supra. Accordingly, defendant's second assignment of error is not well-taken.
In his fourth assignment of error, defendant contends that Ohio's postconviction relief statute is unconstitutional. Specifically, defendant maintains that the postconviction process violates a petitioner's right to due process and equal protection of law guaranteed under the United States Constitution because it does not afford the petitioner the power to conduct or perform discovery to determine whether an evidentiary hearing is warranted. This court and other Ohio appellate courts have rejected defendant's claim that Ohio's postconviction statute does not afford an adequate corrective process. Murphy, supra; Yarbrough, supra; State v. La Mar (2000), Lawrence App. No. 98 CA 23. Accordingly, defendant's fourth assignment of error is not well taken.
By his fifth assignment of error (and his thirty-first ground for relief), defendant contends that he is entitled to a new trial or, at a minimum, a new postconviction relief evidentiary hearing, on the basis that the cumulative effect of the errors alleged in his petition for postconviction relief render his conviction and death sentences unreliable and constitutionally infirm. In support of his argument, defendant relies on State v. Garner (1995), 74 Ohio St.3d 49, 64, wherein the Ohio Supreme Court stated:
 * * * Pursuant to [the] doctrine [of cumulative error], a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial error does not individually constitute cause for reversal. * * *
In the instant case, the doctrine of cumulative error is not applicable as this court has found no merit to any of defendant's claims of error. See Mills, supra; Fears, supra. Accordingly, the fifth assignment of error is not well-taken.
In its cross-assignment of error, the state contends that the trial court erred in allowing defendant to amend his postconviction petition after the hearing to add a thirty-third claim for relief. Since this court has already determined within the first and third assignments of error that defendant's thirty-third ground for relief has no merit, the state's contention is moot. See App.R. 12(A)(1)(c).
For the foregoing reasons, defendant's five assignments of error are overruled, and the state's cross-assignment of error is moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The facts are taken from the Ohio Supreme Court's opinion in State v. Hessler (2000), 90 Ohio St.3d 108.
[2] The original petition, along with all subsequent amendments and corrections, shall hereafter collectively be referred to as the "petition."
[3] On his cell wall, defendant wrote: "mercilessly plan, relentlessly prepare, violently execute, ruthlessly finish * * *" (Tr. 4341). The foregoing is only a small portion of a multi-paragraph diatribe defendant wrote about his actions and his victims. Defendant's trial counsel was successful in arguing that all but the quoted phrase should be excluded from admission.